UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA,

Plaintiff,

-against-

26-CV-
( , J.)
( , M.J.)

COUNTY OF NASSAU;
NASSAU COUNTY DEPARTMENT
OF PARKS, RECREATION AND MUSEUMS;
and NASSAU COUNTY DEPARTMENT
OF PUBLIC WORKS,

Defendants.
-------------------------------------------------X

# CONSENT DECREE AND JUDGMENT

## TABLE OF CONTENTS


I. BACKGROUND ..... 3
II. OBJECTIVES ..... 4
III. JURISDICTION AND VENUE ..... 4
IV. DEFINITIONS ..... 4
V. APPLICABILITY ..... 7
VI. CIVIL PENALTY ..... 8
VII. COMPLIANCE REQUIREMENTS ..... 9
VIII. REPORTING REQUIREMENTS ..... 18
IX. STIPULATED PENALTIES ..... 20
X. FORCE MAJEURE ..... 24
XI. DISPUTE RESOLUTION ..... 26
XII. INFORMATION COLLECTION AND RETENTION ..... 28
XIII. EFFECT OF SETTLEMENT/RESERVATIONS OF RIGHTS ..... 31
XIV. COSTS ..... 32
XV. NOTICES ..... 32
XVI. EFFECTIVE DATE ..... 33
XVII. RETENTION OF JURISDICTION ..... 34
XVIII. MODIFICATION ..... 34
XIX. TERMINATION ..... 34
XX. PUBLIC PARTICIPATION ..... 36
XXI. SIGNATORIES AND SERVICE ..... 36
XXII. INTEGRATION ..... 37
XXIII. FINAL JUDGMENT ..... 38

## I. BACKGROUND

WHEREAS, Plaintiff, the United States of America ("United States" or "Plaintiff"), on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action ("Complaint"), concurrently with this Consent Decree and Judgment ("Consent Judgment"), against Defendants County of Nassau, New York; the Nassau County Department of Parks, Recreation & Museums; and the Nassau County Department of Public Works (collectively "Defendants"), alleging, *inter alia*, that Defendants currently operate large capacity cesspools ("LCC") at 14 locations in violation of the Safe Drinking Water Act ("SDWA" or the "Act"), 42 U.S.C. § 300f, *et seq*., and the regulations promulgated thereunder, 40 C.F.R. §§ 144.80 to 144.89; and

WHEREAS, the Defendants did not meet the deadlines for Closure of the LCCs contemplated in 40 C.F.R. § 144.88; and

WHEREAS, the schedule set forth in this Consent Judgment for Closure of the LCCs is a judicial enforcement schedule; and

WHEREAS, the United States and the Defendants (collectively, the "Parties") recognize, and the Court by entering this Consent Judgment finds, that this Consent Judgment has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Judgment is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section V and with the consent of the Parties,

IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II. OBJECTIVES

1. It is the express purpose of the Parties in entering into this Consent Judgment to further the objectives of the Act to protect public health by regulating the Nation's public drinking water supply and its sources, for the Defendants to achieve compliance with the Act by Closure of the LCCs in accordance with the Compliance Requirements set forth in this Decree.

## III. JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 1423(b) of the SDWA, 42 U.S.C. § 300h-2(b), and 28 U.S.C. §§ 1331, 1345, and 1355, and over the Parties.

3. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a) because Defendants are located in this judicial district and the events giving rise to the claims in the Complaint arose in this district.

4. For purposes of this Consent Judgment, or any action or proceeding to enforce this Consent Judgment, Defendants consent to the Court's jurisdiction over this Consent Judgment, and any such action or proceeding to enforce this Consent Judgment, and consent to venue in this judicial district.

5. For purposes of this Consent Judgment, Defendants agree that the Complaint states a claim upon which relief may be granted pursuant to Section 1423(b) of the SDWA, 42 U.S.C. § 300h-2(b).

## IV. DEFINITIONS

6. Unless otherwise defined herein, terms used in this Consent Judgment shall have the meanings provided in the SDWA and the Underground Injection Control ("UIC")

Regulations as set forth in 40 C.F.R. Part 144. The following definitions apply for the purposes of this Consent Judgment:

"Act" or "SDWA" shall mean the Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j-26.

"Cesspool" shall have the definition set forth in 40 C.F.R. §§ 144.3 and 144.81.

"Class V Rule" shall mean the regulations governing Large-Capacity Cesspools as set forth in 40 C.F.R. §§ 144.85 to 144.89.

"Closure" shall mean permanent closing of a facility upon submission of a Final Closure Report after following the procedures set forth in the memorandum entitled "EPA Region 2 Underground Injection Control (UIC) Program Instructions for Class V Remediation/Closure Plans" (Instructions) appended here as Appendix B.

"Complaint" shall mean the complaint filed by the United States in this action.

"Commence Operation" shall mean the placement of the Septic System into operation after the construction is complete, and after Start up and Testing has been fully performed, such that the Septic System is capable of being consistently and reliably used to accomplish the purposes for which it was intended and fully complies with applicable regulations. In addition, Commence Operation shall mean that the approval has been obtained from the Nassau County Department of Health, and all required permits necessary to commence operation have been received by Defendants.

"Complete Construction" shall mean the completion of construction work to a degree that functional use of the Septic System is achieved.

"Consent Judgment" or "Judgment" or "Decree" shall mean this Consent Decree and Judgment, Appendices A through C, and all modifications made effective in accordance with Section XVIII (Modification).

"Date of Lodging" shall mean the date this Consent Judgment is filed for lodging with the Clerk of the Court for the United States District Court for the Eastern District of New York.

"Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Judgment, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

"Defendants" shall mean the Defendants County of Nassau, Nassau County Department of Parks, Recreation & Museums, and Nassau County Department of Public Works.

"Design" shall mean an engineer's plans and specifications at a level of detail suitable for approval by the Nassau County Department of Health and for incorporation or reference in construction contract procurement.

"Documents" shall be defined in accordance with Local Civil Rule 26.3 of the Local Rules of the United States District Court for the Eastern District of New York.

"Effective Date" shall have the definition provided in Section XVI (Effective Date).

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

"Facility or Facilities" shall mean any place that houses or contains a Prohibited LCC as defined below.

"Inoperable" shall mean that a Large-Capacity Cesspool is no longer usable or in use.

"Instructions" shall mean the "EPA Region 2 Underground Injection Control (UIC) Program Instructions for Class V Remediation/Closure Plans" ("Instructions") appended here as Appendix B.

"Large-Capacity Cesspool" or "LCC" shall mean a Cesspool which is used by a multiple-dwelling community or regional system, or is a non-residential cesspool that has the capacity to serve 20 or more persons a day. See 40 C.F.R. § 144.81(2).

"Paragraph" shall mean a portion of this Consent Judgment identified by an Arabic numeral.

"Parties" shall mean the United States and Defendants.

"Pre-Closure Notification Form" is the document appended as Appendix C to this Consent Judgment.

"Prohibited LCCs" shall mean the 14 LCCs identified in Appendix A.

"Remediation/Closure Plan" shall mean a pre-closure remediation/closure plan that complies with the requirements set forth in the Instructions in Appendix B.

"Remediation /Closure Report" or "Final Report" shall mean the report required by Paragraph K of the Instructions listed in Appendix B.

"Section" shall mean, except when citing a provision of the SDWA or other statute or regulation, a portion of this Consent Judgment identified by a Roman numeral.

"Septic System" shall have the same definition set forth in 40 C.F.R. §144.3.

"UIC" shall have the same definition set forth in 40 C.F.R. § 144.3.

"UIC Regulations" shall mean the regulations governing underground injection wells as set forth in 40 C.F.R. Part 144.

"United States" shall mean the United States of America, acting on behalf of EPA.

## V. APPLICABILITY

7. The obligations of this Consent Judgment apply to and are binding upon the United States and Defendants, and any successors, assigns or other entities or persons otherwise bound by law.

8. Defendants are jointly and severally responsible for meeting the obligations of this Consent Judgment as to the Prohibited LCCs that are identified in Appendix A.

9. No transfer of ownership or operation of any of the Prohibited LCCs, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the terms of this Consent Judgment are implemented. At least 30 Days prior to any such transfer, Defendants shall provide a copy of this Consent Judgment to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed transfer agreement, to the United States and EPA, in accordance with Section XV (Notices). No later than five days after the completion of such transfer, Defendants shall provide an executed copy of the written agreement to the United States in accordance with Section XV (Notices) of this Consent Judgment. Any attempt to transfer ownership or operation of any of the Facilities subject to this Consent Judgment without complying with this Paragraph constitutes a violation of this Consent Judgment and shall be subject to the stipulated penalties described in Paragraph 39 (Compliance Milestones).

10. Defendants shall provide a copy of this Consent Judgment to all officials, directors, employees and agents whose duties might reasonably include compliance with any provision of this Consent Judgment. Defendants shall also provide any contractor retained to

perform work required under this Consent Judgment any sections or appendices of this Consent Judgment relevant to such contractor's performance of work. Defendants shall condition any such contract upon performance of the work in conformity with the terms of this Consent Judgment.

11. In any action to enforce this Consent Judgment, Defendants shall not raise as a defense the failure by any of its officials, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Judgment.

## VI. CIVIL PENALTY

12. a. Defendants shall pay the sum of $100,00.00 as a civil penalty within 30 days of the Effective Date.

b. If the full payment of $100,00.00 to the United States is not made within 30 Days of the Effective Date of this Consent Judgment, Defendants shall pay to the United States interest on the balance due from the original due date to the date of full payment, at the rate calculated pursuant to 28 U.S.C. § 1961 as of the original due date. Defendants will also be liable for stipulated penalties under Section IX (Stipulated Penalties).

13. Defendants shall pay the civil penalty due by FedWire Electronics Funds Transfer ("EFT") to the United States Department of Justice account, in accordance with instructions to be provided to Defendants by the Financial Litigation Program of the United States Attorney's Office for the Eastern District of New York ("FLP") after the Effective Date. The payment instructions provided by the FLP shall include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Judgment. The FLP will provide the payment instructions within ten days of the Effective Date via e-mail to Kemely Weiss at KWeiss@nassaucountyny.gov, County

Attorney, on behalf of Defendants. Defendants may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XV (Notices).

14. At the time of payment, Defendants shall send notice that payment has been made to: (i) EPA via e-mail at acctsreceivable.cinwd@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) the United States via e-mail or regular mail in accordance with Section XV (Notices). Such notice shall reference the civil action number, USAO number 2022v02299, and Department of Justice case number 90-5-1-1-13185.

## VII. COMPLIANCE REQUIREMENTS

A. General Compliance Provisions

15. Defendants shall fully comply with the Class V Rule, 40 C.F.R. § 144.80 *et seq.*, by closing the Prohibited LCCs or by otherwise converting them to lawful non-LCC uses in accordance with the schedule set forth in Paragraph VII.B.

16. Defendants shall not install or operate any new LCCs upon premises it owns, operates, leases or otherwise controls.

17. Defendants shall prepare their proposed Remediation/Closure plans in accordance with the Instructions, or if EPA further updates such Instructions, in accordance with such update.

18. Defendants shall implement the Closure of each Prohibited LCC in accordance with the EPA-approved or EPA-modified Remediation/Closure Plan. Defendants must complete the Closure of each Prohibited LCC or render each Prohibited LCC Inoperable by either the

deadline specified in Paragraph VII.B. or within 60 days after EPA approves or modifies Defendants' Remediation/Closure Plan, whichever date is later.

19. Defendants shall submit the Final Report as required by Paragraph K of the Instructions within 30 days of each Prohibited LCC being rendered Inoperable.

20. Approval of Deliverables: After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Judgment, EPA shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

21. If the submission is approved pursuant to Paragraph 20 (Approval of Deliverables), Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part pursuant to Paragraph 20(b) or (c), Defendants shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendants' right to dispute only the specified conditions or the disapproved portions, under Section XI (Dispute Resolution).

22. If the submission is disapproved in whole or in part pursuant to Paragraph 20(c) or (d), Defendants shall, within 45 days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with the preceding Paragraph.

23. If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to Defendants' right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided for in this Consent Judgment.

24. Any stipulated penalties applicable to the original submission, as provided in Section IX, shall accrue during the 45 day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Judgment, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

25. Permits: Where any compliance obligation under this Section requires Defendants to obtain applicable federal, state, or local permits or approvals, if any, Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendants may seek relief under the provisions of Section X (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

26. The compliance requirements of this Consent Judgment do not relieve Defendants of any compliance obligations required by the Act or its implementing regulations, or by any other federal or state law, regulation, permit, or other requirement.

B. Compliance Milestones

27. For each Prohibited LCC identified in Appendix A, Defendants shall comply with the following milestones:

**a. Muttontown Park & Preserve – Nassau Hall**
**Muttontown Park & Preserve – Nassau Hall Apartments (1A, 1B, 2 & 3)**

1. By Effective Date of Consent Judgment, submit to EPA the Class V Well Pre-Closure Notification Form.

2. By March 31, 2026, commence Design of Septic System.

3. By April 30, 2026, submit to EPA a Remediation/Closure Plan along with a certification stating that the Design and permit application has been submitted to Nassau County Department of Health ("NCDOH").

4. By August 31, 2026, advertise bid for construction of Septic System.

5. By September 30, 2026, award bid for construction of Septic System.

6. By October 31, 2026, Complete Construction of Septic System.

7. By November 15, 2026, Commence Operation of Septic System and render all LCCs inoperable.

8. By December 15, 2026, submit to EPA Remediation/Closure Report.

**b. Muttontown Park & Preserve – Chelsea Caretaker Unit & Chelsea Garage Apartment**
**Muttontown Park & Preserve – Chelsea Maintenance Facility**

1. By April 1, 2026, submit to EPA the Class V Well Pre-Closure Notification Form.

2. By May 31, 2026, commence Design of Septic System.

3. By June 30, 2026, submit to EPA a Remediation/Closure Plan along with a certification stating that the Design and permit application has been submitted to NCDOH.

4. By October 31, 2026, advertise for bids for construction of Septic System.

5. By November 30, 2026, award bid for construction of Septic System.

6. By December 31, 2026, Complete Construction of Septic System.

7. By January 15, 2027, Commence Operation of Septic System and render all LCCs inoperable.

8. By February 15, 2027, submit to a EPA Remediation/Closure Report.

c. **Cedarmere Preserve**

1. By June 30, 2026, submit to EPA the Class V Well Pre-Closure Notification Form.

2. By July 31, 2026, commence Design of Septic System.

3. By September 30, 2026, submit to EPA a Remediation/Closure Plan along with a certification stating that the Design and permit application has been submitted to NCDOH.

4. By January 31, 2027, advertise for bid for Septic System.

5. By February 28, 2027, award bid for Septic System.

6. By March 31, 2027, Complete Construction of Septic System.

7. By April 15, 2027, Commence Operation of Septic System and render all LCCs inoperable.

8. By May 15, 2027, submit to EPA Remediation/Closure Report.

d. **Muttontown Park & Preserve – Barnswallow Carriage House & Barnswallow Center**

1. By August 1, 2026, submit to EPA the Class V Well Pre-Closure Notification Form.

2. By September 31, 2026, commence Design of Septic System.

3. By November 30, 2026, submit to EPA a Remediation/Closure Plan along with certification stating that the Design and permit application has been submitted to NCDOH.

4. By March 31, 2027, advertise for bids for construction of Septic System.

5. By April 30, 2027, award bid for construction of Septic System.

6. By May 31, 2027, Complete Construction of Septic System.

7. By June 15, 2027, Commence Operation of Septic System and render all LCCs inoperable.

8. By July 15, 2027, submit to EPA the Remediation/Closure Report.

e. **Old Mill Farms – Tudor House**

1. By August 31, 2026, submit to EPA the Class V Well Pre-Closure Notification Form.

2. By September 31, 2026, commence Design of Septic System.

3. By November 30, 2026, submit to EPA a Remediation/Closure Plan along with a certification stating that the Design and permit application has been submitted to NCDOH.

4. By March 31, 2027, advertise for bids for construction of Septic System.

5. By April 30, 2027, award bid for construction of Septic System.

6. By May 31, 2027, Complete Construction of Septic System.

7. By June 15, 2027, Commence Operation of Septic System and render all LCCs inoperable.

8. By July 15, 2027, submit to EPA the Remediation/Closure Report.

f. **Eldersfield Preserve**

1. By October 31, 2026, submit to EPA the Class V Well Pre-Closure Notification Form.

2. By November 30, 2026, commence Design of Septic System.

3. By January 31, 2027, submit to EPA a Remediation/Closure Plan along with a certification stating that the Design and permit application has been submitted to NCDOH.

4. By May 31, 2027, advertise for bids for construction of Septic System.

5. By June 30, 2027, award bid for construction of Septic System.

6. By July 31, 2027, Complete Construction of Septic System.

7. By August 15, 2027, Commence Operation of Septic System and render all LCCs inoperable.

8. By September 15, 2027, submit to EPA the Remediation/Closure Report.

g. **<u>Sands Point Park & Preserve-Bowling Alley Apartments 1&2</u>**

1. By December 31, 2026, submit to EPA the Class V Well Pre-Closure Notification Form.

2. By January 31, 2027, commence Design of Septic System.

3. By March 31, 2027, submit to EPA a Remediation/Closure Plan along with a certification stating that the Design and permit application has been submitted to NCDOH.

4. By July 31, 2027, advertise for bids for construction of Septic System.

5. By August 31, 2027, award bid for construction of Septic System.

6. By September 30, 2027, Complete Construction of Septic System.

7. By October 15, 2027, Commence Operation of Septic System and render all LCCs inoperable.

8. By November 15, 2027, submit to EPA the Remediation/Closure Report.

h. **<u>Sands Point Preserve- Hempstead House</u>:**

1. By May 31, 2026, submit to EPA the Class V Well Pre-Closure Notification Form.

2. By June 30, 2026, commence Design Septic System.

3. By December 31, 2026, submit to EPA a Remediation/Closure Plan along with a certification stating that the Design and permit application has been submitted to NCDOH.

4. By June 30, 2027, advertise for bids for construction of Septic System.

5. By November 30, 2027, award bid for construction of Septic System.

6. By March 31, 2028, Complete Construction of Septic System.

7. By April 15, 2028, Commence Operation of Septic System and render all LCCs inoperable.
8. By May 15, 2028, submit to EPA the Remediation/Closure Report.

i. **Sands Point Preserve, Castle Gould**

1. By May 31, 2026, submit to EPA the Class V Well Pre-Closure Notification Form.

2. By June 30, 2026, commence Design of Septic System.

3. By December 31, 2026, submit to EPA a Remediation/Closure Plan along with a certification stating that the Design and permit application has been submitted to NCDOH.

4. By June 30, 2027, advertise for bids for construction of Septic System.

5. By November 30, 2027, award bid for construction of Septic System.

6. By April 30, 2028, Complete Construction of Septic System.

7. By May 15, 2028, Commence Operation of Septic System and render all LCCs inoperable.

8. By June 15, 2028, submit to EPA the Remediation/Closure Report.

j. **Sands Point Preserve Learning Center:**

1. By May 31, 2026, submit to EPA the Class V Well Pre-Closure Notification Form.

2. By June 30, 2026, commence Design of Septic System.

3. By December 31, 2026, submit to EPA a Remediation/Closure Plan along with certification stating that the Design and permit application has been submitted to NCDOH.

4. By June 30, 2027, advertise for bids for construction of Septic System.

5. By November 30, 2027, award bid for construction of Septic System.

6. By April 30, 2028, Complete Construction of Septic System.

7. By May 15, 2028, Commence Operation of Septic System and render all LCCs inoperable.

8. By June 15, 2028, submit to EPA the Remediation/Closure Report.

**k. Science Museum of Long Island**

1. May 31, 2026, submit to EPA the Class V Well Pre-Closure Notification Form.

2. By June 30, 2026, commence Design Septic System.

3. By December 31, 2026, submit to EPA a Remediation/Closure Plan along with a certification stating that the Design and permit application has been submitted to NCDOH.

4. By June 30, 2027, advertise for bids for construction of Septic System.

5. By November 30, 2027, award bid for construction of Septic System.

6. By May 31, 2028, Complete Construction of Septic System.

7. By June 15, 2028, Commence Operation of Septic System and render all LCCs inoperable.

8. By July 15, 2028, submit to EPA the Remediation/Closure Report.

**l. Bailey Arboretum**

1. By May 31, 2026, submit to EPA the Class V Well Pre-Closure Notification Form.

2. By June 30, 2026, commence Design of Septic System.

3. By December 31, 2026, submit to EPA a Remediation/Closure Plan along with a certification stating that the Design and permit application has been submitted to NCDOH.

4. By June 30, 2027, advertise for bids for construction of Septic System.

5. By November 30, 2027, award bid for construction of Septic System.

6. By June 30, 2028, Complete Construction of Septic System.

7. By July 15, 2028, Commence Operation of Septic System and render all LCCs inoperable.

8. By July 15, 2028, submit to EPA the Remediation/Closure Report.

**m. Identification of LCCs and/or Motor Vehicle Waste Disposal Wells banned by the Class V Rule Beyond this Consent Judgment**

Defendants agree to undertake a survey to determine whether it continues to own or operate any additional LCCs or motor vehicle waste disposal wells ("MVWDWs"), as defined by 40 C.F.R. § 144.81, beyond the Prohibited LCCs identified in this Consent Judgment that are prohibited by the Class V Rule, and to submit an inventory of any such LCCs or MVWDWs identified to EPA by December 1, 2027. The Parties agree that they will work together to ensure the closure of any such LCCs or MVWDWs identified by the survey conducted under this Paragraph.

## VIII. REPORTING REQUIREMENTS

28. Semi-Annual Reports. Defendants shall submit in writing to the United States and EPA a report (Semi-Annual Report) for the preceding semi-annual period. The first Semi-Annual Report shall be issued on October 15, 2026, and subsequent Semi-Annual will be issued every six months thereafter (April 15, 2027, etc.) until termination of this Consent Judgment. The Semi-Annual Report shall address the LCC closure work, including a description of the work completed during the preceding six months;

29. Final Report. Concurrent with Defendants' request that this Consent Judgment be terminated pursuant to Paragraph 83, Defendants shall submit to the EPA a final report (Final Report) that shall provide an evaluation of their experience in implementing the requirements set forth in Sections VII (Compliance Requirements) of this Consent Judgment. This evaluation is to be provided subsequent to Defendants having fulfilled all of their obligations under this Consent Judgment and shall include: (i) a description of the elements of the compliance requirements that Defendants anticipate continuing after termination of the Consent Judgment; and (i) a description

of the elements of the compliance requirements that Defendants anticipate continuing in a modified form. This evaluation shall not be a basis for stipulated penalties or any other violation under this Consent Judgment.

30. If Defendants fail to comply with, violate, or have reason to believe that they may violate, any requirement of this Consent Judgment, Defendants shall notify the United States of such violation and its likely duration, in writing, within 14 Days of the Day Defendants first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall so state in the report. Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendants becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section X (Force Majeure).

31. Whenever any violation of this Consent Judgment or any other event affecting Defendants' performance under this Consent Judgment may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendants first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

32. All reports shall be submitted to the persons designated in Section XV (Notices).

33. Each report, notice, protocol, plan, or other document submitted by Defendants under this Consent Judgment shall be signed by an official of the applicable defendant and shall include the following certification:

> I certify under penalty of law, that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on any personal knowledge I may have and my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

34. This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

35. The reporting requirements of this Consent Judgment do not relieve Defendants of any reporting obligations required by the SDWA or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

36. Any information provided pursuant to this Consent Judgment may be used by the United States in any proceeding to enforce the provisions of this Consent Judgment and as otherwise permitted by law.

## IX. STIPULATED PENALTIES

37. Defendants shall be jointly and severally liable to the United States for stipulated penalties for violations of this Consent Judgment in accordance with this Section, unless excused under Section X (Force Majeure) or Section XI (Dispute Resolution). A violation includes failing to perform any obligation required by the terms of this Consent Judgment, according to all applicable requirements of this Consent Judgment and within the specified time schedules established by or approved under this Consent Judgment.

38. Late Payment of Civil Penalty. If Defendants fail to pay the civil penalty required to be paid pursuant to Section IX (Civil Penalties) when due, Defendants shall pay a stipulated penalty of $500 per Day for each Day that the payment is late. Late payment of the obligations stated in Section VI (Civil Penalty) shall be made in accordance with the payment instructions provided in that Section. Stipulated penalties under this Paragraph shall be paid as provided in this Section.

39. Compliance Milestones: The following penalties shall accrue per violation per Day for each violation for failure to comply with the requirements of Section VII (Compliance Requirements) and Appendix A of this Consent Judgment, unless otherwise specified in this Section:

| Days of Non-Compliance Or Violation | Penalty per Day per Violation |
|---|---|
| Day 1 through Day 30 | $ 750.00 |
| Day 31 through Day 59 | $1,250.00 |
| 60th Day and beyond | $2,000.00 |

40. Reporting Requirements. The following stipulated penalties shall accrue per Day per violation for each violation of the reporting requirements set forth in Section VIII (Reporting Requirements).

| Days of Non-Compliance Or Violation | Penalty per Day per Violation |
|---|---|
| Day 1 through Day30 | $300.00 |
| Day 31 through Day 59 | $500.00 |
| 60th Day and beyond | $2,000.00 |

41. Except as otherwise specified in this Consent Judgment, the stipulated penalties provided for in this Consent Judgment shall begin to accrue on the Day after performance is due or on the Day that a violation occurs, whichever is applicable, and shall continue to accrue until

performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Judgment.

42. Defendants shall pay any stipulated penalty within 30 Days of receiving a written demand from the United States.

43. The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Judgment without further order of the Court.

44. Stipulated penalties shall continue to accrue as provided in this Section during any dispute resolution process, but need not be paid until the following:

1. If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the Effective Date of the agreement or the receipt of EPA's decision.

2. If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 30 Days of receiving the Court's decision or order, except as provided in subparagraph c of this Paragraph.

3. If any Party appeals the Court's decision and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 30 Days of receiving the final appellate court decision.

45. Obligations Prior to the Effective Date. Upon the Effective Date of this Consent Judgment, the stipulated penalty provisions of this Consent Judgment shall be retroactively enforceable with regard to any and all violations of Sections VII (Compliance

Requirements), and Appendix A that have occurred from the day that Defendants signed this Consent Judgment through the Effective Date, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Judgment is entered by the Court.

46. Defendants shall, as directed by the United States in its demand, pay stipulated penalties owing to the United States in accordance with the instructions to be provided by the FLP. Payment of stipulated penalties shall be accompanied by transmittal correspondence that specifies that the payment is for stipulated penalties due under this Consent Judgment to be deposited into the U.S. Treasury pursuant to 31 U.S.C. § 3302 and shall reference the case name and number. Defendants shall send a copy of the transmittal correspondence to the United States as provided in Section XV (Notices).

47. If Defendants fail to pay stipulated penalties according to the terms of this Consent Judgment, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.

48. Non-Exclusivity of Remedy. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Judgment. Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendants' violation of this Judgment or applicable law, including but not limited to an action against Defendants for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Judgment shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Judgment.

## X. FORCE MAJEURE

49. "Force majeure," for purposes of this Consent Judgment, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors that delays or prevents the performance of any obligation under this Consent Judgment despite Defendants' best efforts to fulfill the obligation. Given the need to protect public health and welfare and the environment, the requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include Defendants' financial inability to perform any obligation under this Consent Judgment.

50. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Judgment, whether or not caused by a force majeure event, Defendants shall provide notice orally and by electronic or facsimile transmission to the United States and EPA, in accordance with the notice provisions of Section XV (Notices) within 72 hours of when any Defendant first knew that the event might cause a delay. Within seven days thereafter, Defendants shall provide in writing to the United States and EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendants shall include with any

notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

51. If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Judgment that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. The United States will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

52. If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the United States will notify Defendants in writing of its decision. The decision of the United States shall be binding, unless Defendants invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution).

53. If Defendants elect to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), they shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or relief sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and

that Defendants complied with the requirements of this Section. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligations of this Consent Judgment identified to the United States and the Court.

## XI. DISPUTE RESOLUTION

54. Unless otherwise expressly provided for in this Consent Judgment, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Judgment. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendants arising under this Consent Judgment.

55. Informal Dispute Resolution: Any dispute subject to Dispute Resolution under the procedures set forth in this Section shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 45 Days after the conclusion of the informal negotiation period, Defendants invoke the formal dispute resolution procedures as set forth in Paragraph VII.B.

56. Formal Dispute Resolution. Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position

shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

57. The United States shall serve its Statement of Position upon Defendants within 45 Days of receipt of Defendants' statement of position. The United States' Statement of Position shall include, but need not be limited to, factual data, analysis, or opinion supporting that position and supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute, in accordance with the following Paragraph.

58. Defendants may seek judicial review of the dispute by filing with the Court, and serving on the United States, in accordance with Section XV (Notices), a motion requesting judicial resolution of the dispute. The motion or, if the Court requires the filing of a pre-motion letter before the filing of a motion, pre-motion letter must be filed within 30 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Judgment.

59. The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

60. Standard of Review.

1. Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Judgment, in any dispute brought under Paragraph 56

pertaining to the adequacy or appropriateness of LCC closure plans, procedures to implement closure plans, schedules or any other items requiring approval by EPA under this Consent Judgment; the adequacy of the performance of work undertaken pursuant to this Consent Judgment for all disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious, or otherwise not in accordance with law and that Defendants' position complies with this Consent Judgment and the SDWA, and that Defendants are entitled to relief under applicable law.

2. Other Disputes. Except as otherwise provided in this Consent Judgment, in any other dispute brought under Paragraph 56 Defendants shall bear the burden of proving that their position complies with this Consent Judgment and is consistent with the objectives of this Consent Judgment.

61. The invocation of the dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Judgment, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 44. If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII. INFORMATION COLLECTION AND RETENTION

62. The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any Nassau County Facility covered by this

Consent Judgment, at all reasonable times, upon representation of credentials to the County facility manager, to:

1. monitor the progress of activities required under this Consent Judgment;

2. verify any data or information submitted to the United States in accordance with the terms of this Consent Judgment;

3. obtain samples and, upon request, splits of any samples taken by Defendants or their representatives, contractors, or consultants;

4. obtain documentary evidence, including photographs and similar data; and

5. assess Defendants' compliance with this Consent Judgment.

63. Upon request, Defendants shall provide EPA or its authorized representatives with splits of any samples taken by Defendants pursuant to Section VII (Compliance Requirements). Upon request, EPA shall provide Defendants splits of any samples taken by EPA.

64. EPA's rights under Paragraphs 62 and 63 are in addition to any rights that the United States or EPA may have under applicable laws, regulations, or permits, including to be provided with samples.

65. Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all Documents, records, or other information (including Documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of their obligations under this Consent Judgment until five years after the termination of this Consent Judgment. This information-retention requirement shall apply regardless of any contrary County or institutional policies or procedures.

At any time during this information-retention period, upon request by the United States, Defendants shall provide copies of any non-privileged Documents, records, or other information required to be maintained under this Paragraph.

66. At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States at least 90 Days prior to the destruction of any Documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendants shall deliver any such Documents, records, or other information to EPA. Defendants may assert that certain Documents, records, or other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendants assert such a privilege, it shall provide the following: (a) the title of the Document, record, or information; (b) the date of the Document, record, or information; (c) the name and title of each author of the Document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Document, record, or information; and (f) the privilege asserted by Defendants. However, no Documents, records, or other information created or generated pursuant to the requirements of this Consent Judgment shall be withheld on grounds of privilege.

67. Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

This Consent Judgment in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or EPA pursuant to applicable laws, regulations, or permits, nor does it limit or affect any duty or obligation of

Defendants to maintain Documents, records, or other information imposed by applicable laws, regulations, or permits.

## XIII. EFFECT OF SETTLEMENT/RESERVATIONS OF RIGHTS

68. This Consent Judgment resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

69. The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Judgment. This Consent Judgment shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the SDWA or under other federal or state laws, regulations, or permit conditions except as to those claims resolved pursuant to this Consent Judgment as set forth in Paragraph 69. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by the Prohibited LCCs, whether related to the violations addressed in this Consent Judgment or otherwise.

70. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Prohibited LCCs, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses, based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 69.

71. This Consent Judgment is not a permit, or a modification of any permit, under any applicable federal or state, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws,

regulations, and permits (if any); and Defendants' compliance with this Consent Judgment shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Judgment, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Judgment will result in compliance with any provision of the SDWA, or with any other provisions of any applicable federal state, or local laws, regulations, or permits.

72. This Consent Judgment does not limit or affect the rights of Defendants or of the United States against any third parties, not party to this Consent Judgment, nor does it limit the rights of third parties, not party to this Consent Judgment, against Defendants, except as otherwise provided by law.

73. This Consent Judgment shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Judgment.

## XIV. COSTS

74. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XV. NOTICES

75. Unless otherwise specified in this Consent Judgment, all notifications, submissions, or communications required by this Consent Judgment shall be made in writing and submitted electronically addressed as follows:

To the United States:

Assistant United States Attorneys
United States Attorney's Office
Eastern District of New York

271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201
USANYE-EnviroReport@usdoj.gov

To the EPA:

U.S. Environmental Protection Agency, Region 2
Water and General Law Branch
Office of Regional Counsel
Feinmark.Phyllis@epa.gov
Fischer.Lauren@epa.gov

U.S. Environmental Protection Agency Region 2
Water Compliance Branch
Region2_SDWAEnforcement@epa.gov
kim.lisa@epa.gov

To Defendants:

Nassau County Department of Public Works
Michael Kwaschyn
Commissioner
MKwaschyn@nassaucountyny.gov

Office of the Nassau County Attorney
David J. DeBaun
Bureau Chief, Municipal Transactions
ddebaun@nassaucountyny.gov

76. Any Party may, by written notice to the other Party, change its designated notice recipient or notice address provided above.

77. Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Judgment or by mutual agreement of the Parties in writing.

## XVI. EFFECTIVE DATE

78. The Effective Date of this Consent Judgment shall be the date upon which this Consent Judgment is entered by the Court or a motion to enter the Consent Judgment is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendants

hereby agree that they shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Consent Judgment before entry, or the Court declines to enter the Consent Judgment, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVII. RETENTION OF JURISDICTION

79. The Court shall retain jurisdiction over this action until termination of this Consent Judgment, for the purposes of resolving disputes arising under this Consent Judgment, entering orders modifying this Consent Judgment, pursuant to Sections XI (Dispute Resolution) and XVIII (Modification), or effectuating or enforcing compliance with the terms of this Consent Judgment.

## XVIII. MODIFICATION

80. The terms of this Consent Judgment, including its appendices, may be modified only by a subsequent written agreement signed by both Parties. Where the modification constitutes a material change to this Consent Judgment, it shall be effective only upon approval by the Court.

81. Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI (Dispute Resolution), provided, however that the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b). The burden of proof set forth in Paragraph 60 is not applicable to disputes concerning modification of this Decree.

## XIX. TERMINATION

82. After Defendants have: (i) completed all of the requirements set forth in Section VII (Compliance Requirements) to the satisfaction of the United States; and (ii) paid the civil

penalty and any accrued stipulated penalties as required by this Consent Judgment, Defendants may serve upon the United States a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

83. Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Judgment. If the United States agrees that this Consent Judgment may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating this Consent Judgment.

84. If the United States does not agree that this Consent Judgment may be terminated, Defendants may invoke dispute resolution under Section XI (Dispute Resolution). However, Defendants shall not seek dispute resolution for any dispute regarding termination until 90 Days after service of its Request for Termination.

85. At any time, if the United States [after consultation with the State] has sufficient information to determine that Defendant has met the requirements of termination under Paragraph 83, the United States, after notice to the Defendant, may file a motion to terminate the Decree. If the parties are in agreement, a joint stipulation of termination may be filed with the Court.

86. If the United States does not have sufficient information to determine whether Defendant has met the requirements of termination under Paragraph 83, the United States may request additional information from Defendant, as permitted pursuant to Section XII (Information Collection and Retention), which Defendant shall provide within 30 days of receiving the United States' request.

## XX. PUBLIC PARTICIPATION

87. This Consent Judgment shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent to the entry of this Consent Judgment if the comments regarding the Consent Judgment disclose facts or considerations indicating that this Consent Judgment is inappropriate, improper, or inadequate. Defendants consent to entry of this Consent Judgment without further notice and agree not to withdraw from or oppose entry of this Consent Judgment by the Court or to challenge any provision of this Consent Judgment, unless the United States has notified Defendants in writing that it no longer supports entry of this Consent Judgment. Defendants consent to entry of this Consent Judgment.

## XXI. SIGNATORIES AND SERVICE

88. Each undersigned representative of Defendants, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that they are fully authorized to enter into the terms and conditions of this Consent Judgment and to execute and legally bind the Party they represent to the terms of this Consent Judgment.

89. This Consent Judgment may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Judgment and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. The Parties agree that Defendants need not file answers to the Complaint in this action unless or until this Court expressly declines to enter this Consent Judgment.

## XXII. INTEGRATION

90. The following Appendices to this Consent Judgment are part of the Consent Judgment and fully enforceable as if set forth within this Consent Judgment:

| | |
|---|---|
| Appendix A | Prohibited LLCs |
| Appendix B | EPA Region 2 UIC Program Instructions for Class V Remediation/Closure Plans |
| Appendix C | Pre-Closure Notification Form |

91. This Consent Judgment constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this Consent Judgment and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are to be subsequently submitted and approved pursuant to this Consent Judgment, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Judgment or the settlement it represents, nor shall it be used in construing the terms of this Consent Judgment.

## XXIII. FINAL JUDGMENT

92. Upon approval and entry of this Consent Judgment by the Court, this Consent Judgment shall constitute a final judgment of the Court as between the Parties.

* * * * * * * * * *

DATED and ENTERED this ____ day of ______________, 2026

______________________________
UNITED STATES DISTRICT JUDGE

The Parties, by their undersigned representatives, enter into this Consent Judgment in *United States v. County of Nassau, New York; the Nassau County Department of Parks, Recreation & Museums; and the Nassau County Department of Public Works*

FOR THE UNITED STATES OF AMERICA:

ADAM R.F. GUSTAFSON
Principal Deputy Attorney General
Energy and Natural Resources Division
U.S. Department of Justice

JOSEPH NOCELLA, JR.
United States Attorney for the
Eastern District of New York

By: LAUREN FISCHER Digitally signed by LAUREN FISCHER Date: 2026.11.16 16:07:10 -05'00'

LAUREN FISCHER
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

*Attorneys for the United States of America*

Dated: Brooklyn, New York
November 16, 2026

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

PATRICIA HICK Digitally signed by PATRICIA HICK
Date: 2026.11.09 13:49:42 -05'00'

PATRICIA C. HICK
Acting Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, NY 10007

OF COUNSEL:
PHYLLIS KAPLAN FEINMARK
Chief, Water and General Law Branch
LAUREN FISCHER
Assistant Regional Counsel
Water and General Law Branch
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, NY 10007

FOR THE COUNTY OF NASSAU:

Dated: Mineola New York
10/1 , 2026

Thomas A. Adams
County Attorney of Nassau County

# APPENDIX A

| Existing Large Capacity Cesspools | |
|---|---|
| **Facility Description** | **Address** |
| Muttontown Park & Preserve<br>Nassau Hall | 1864 Muttontown Road<br>Syosset, NY 11971 |
| Muttontown Park & Preserve<br>Nassau Hall (Apts 1A, 1B, 2 & 3) | 1864 Muttontown Road<br>Syosset, NY 11971 |
| Muttontown Park & Preserve<br>Chelsea Caretaker Unit & Chelsea Garage Apt | 34 Muttontown Lane<br>East Norwich, NY 11732 |
| Muttontown Park & Preserve<br>Chelsea Maintenance Facility | 36 Muttontown Lane<br>East Norwich, NY 11732 |
| Cedamere Preserve | 225 Bryant Avenue<br>Roslyn, NY, 11576 |
| Muttontown Park & Preserve<br>Barnswallow Carriage & Barnswallow Center | 1920 Route 106<br>Muttontown, NY 11791 |
| Old Mill Farms<br>Tudor House | 52 Route 106<br>Jericho, NY 11753 |
| Eldersfield Preserve-<br>Art Guild & Eldersfield<br>(Includes Preserve-Main House connected to Art Guild) | 200 Port Washington Blvd<br>Manhasset, NY 11030 |
| Sand Points Park & Preserve<br>Bowling Alley Apts 1 & 2 | 131 Middle Neck Road<br>Port Washington, NY 11050 |
| Sands Point Preserve<br>Hempstead House | 127 Middle Neck Rd<br>Port Washington, NY 11050 |
| Sands Point Preserve<br>Castle Gould | 127 Middle Neck Rd<br>Port Washington, NY 11050 |
| Sands Point Preserve<br>Learning Center | 127 Middle Neck Rd<br>Port Washington, NY 11050 |
| Leeds Pond Preserve<br>Science Museum of Long Island | 1526 N Plandome Rd,<br>Manhasset, NY 11030 |
| Bailey Arboretum | 194 Bayville Rd<br>Locust Valley, NY 11560 |

# APPENDIX B

# EPA Region 2 Underground Injection Control (UIC) Program
# Instructions for Class V Remediation/Closure Plans

- To ensure UIC Class V well remediation/closure is conducted in accordance with regulatory requirements and in a manner protective of the environment, the United States Environmental Protection Agency Region 2 (EPA) UIC Program requires that the following information be included in a Class V Remediation/Closure Plan ("Plan" or "Workplan"). As outlined in this document, please be advised that the requirements vary depending on the type of UIC structure, the type of facility, and the fluid(s) discharged to the well.

- UIC Class V Remediation/Closure Plans must be submitted to and approved by the EPA prior to initiation of **any** drain sealing, well sampling and/or clean-out activities. You will be notified in writing that EPA has approved your Plan or that the Plan requires modifications to meet the regulatory requirements. *Please Note:* State and/or local regulatory agencies may have additional regulations and requirements.

- Failure to properly implement these requirements will result in EPA considering all available enforcement options.

- All Remediation/Closure Plans and Final Reports must be submitted to EPA Region 2 for review and approval.

## SECTION I: GENERAL REQUIREMENTS

The following information must be included in a Remediation/Closure Plan ("Plan" or "Workplan") for all types of Class V wells. If the item is not applicable to your site, please indicate so in the Plan.

**A. Site Schematic and Well-System Diagram**. The diagram must include all buildings; drinking water wells; drains (e.g., floor drains, sink drains, storm drains); piping; all storage areas for chemicals, oils, or wastes; chemical or sanitary waste processing units (e.g., oil-water separators, septic tanks, wastewater treatment systems) and final discharge points for all drainage (e.g., drywells/overflow drywells, septic tanks/leach fields, open underground pipes, retention basins, surface waters/streams, municipal sanitary/storm sewer connections).

**B. Description of business.** Description must include all activities conducted, or known to have been conducted, at the facility and a listing of chemicals and wastes used, generated, disposed of and/or stored at the facility. In addition, include the Standard Industry Code (SIC) for the current use or, if vacant, the immediate prior use.

**C. Description of all fluids injected.** Description must include fluids which enter, may enter or

may have entered the injection well(s); or are suspected or known to have been used at the facility. Include any recent analytical results for pertinent wastewater, sludge and/or soil sampling.

The Workplan for a large capacity cesspool that has received only sanitary waste must include supporting information to affirm the sanitary only discharge (i.e. facility either does not use, generate or store chemicals or chemical wastes; or no drains of any kind are located near chemicals/chemical wastes are delivered, used, stored or generated).

**D. Verification of connection between drain and UIC well.** Connection between all drains and the injection well(s) must be verified by an independent third party and/or witnessed by an EPA inspector. A statement must be included indicating who will be performing the verification and what verification method will be used.

**E. Description of permanent closure.** If applicable, include a description of the plug emplacements or how the drain(s) and/or well(s) will be permanently closed.

As of April 5, 2005, large capacity cesspools were banned and must be permanently closed or upgraded to septic systems by installing septic tanks. As of January 1, 2008, all motor vehicle waste disposal wells must be permanently closed unless permitted.

**F. Contaminant removal:** Describe the procedures to be used to pump, excavate, or otherwise remove all contaminated liquid, sludge and soil from within, beneath and around the injection well until: (1) visibly clean soil is reached; or (2) structural integrity of the excavation or buildings/structures near the excavation, may be compromised, or (3) ground water is encountered in sufficient quantities to preclude additional excavation. If a point of compromised structural integrity is reached or ground water flow precludes removal of all contamination, soil borings or other remedial methods may be required to delineate the extent of any remaining contamination within, beneath or around the injection well. If there is a treatment tank (e.g., oil-water separator, septic tank) or associated piping in the drainage system discharging to the injection well(s), the contents of the tank(s) and piping must be cleaned out and disposed of properly. Any cleaning of tank(s) or piping must be done in a manner that does not release contaminants into the environment. The Workplan must describe the procedures to be used.

Please note, excavation of soil is typically not required for large capacity cesspools that have received only sanitary waste. However, the contents of the sanitary only cesspool must be pumped out and disposed of properly by a licensed hauler.

**G. On-site storage of excavated material:** Include a description of on-site storage for excavated material to be used while awaiting proper disposal of all wastes (soil, gravel, sludge, liquids or other materials) removed from the Class V well system (i.e., drain, treatment tank and injection well). The waste storage methodology utilized must ensure that contaminants are not released back into the environment during the period of storage. Dry soils and other dry wastes may be stored on, and covered by, heavy gauge plastic or stored in roll-off containers designed for such a use. Liquid wastes must be stored in covered drums, tanks or roll-off containers designed to contain such wastes.

**H. Waste characterization**: All excavated material (soil, gravel, sludge, liquid or other materials)

must be characterized for disposal purposes and disposed of or otherwise managed, in accordance with all applicable Federal, State, and local requirements. The Workplan must describe the procedures to be used.

**I. Minimum sampling and analytical requirements**: Specific sampling and analytical requirements are dependent on the type well structure and type of facility at which the well is being remediated. See Sections II and III for the minimum well sampling and analytical requirements.

Samples should be collected in a manner consistent with the sampling procedures outlined in EPA's compendium of analytical and sampling methods titled "Test Methods for Evaluating Solid Waste, Physical/Chemical Methods", also known as SW-846 (see http://www.epa.gov/epawaste/hazard/testmethods/sw846/online/index.htm). Workplans must outline sampling collection procedures that will be followed to ensure integrity of the sample during collection, transport and analysis.

Samples must be analyzed by a certified laboratory for all contaminants that could have entered into the groundwater as a result of the owner/operator's activities. The laboratory's Practical Quantitation Limit (PQL) achieved for all initial and/or endpoint samples must be at or below the corresponding Region 2 UIC Clean-up Objectives (see Table 1). If the PQL for any analyte is not at or below the corresponding clean-up objective, a detailed explanation must be included as to why the PQL was not, and/or cannot, be at or below the corresponding soil cleanup objective.

**J. Backfill:** Clean inert soil or sand shall be used as backfill.

**K. Final Report:** A Final Remediation/Closure Report must be completed within 30 days of completion of remediation/closure and must include at a minimum: remediation procedures used; the name, address and telephone number of all entities that supplied backfill material; a summary table comparing the analytical results to Region 2 UIC Cleanup Objectives (see Table 1) by sample and identifying any exceedances; full laboratory report for all analytical results (including quality control analyses, sample dilution if any, clear identification of sample location and depth, chain of custody and detection levels achieved); and waste disposal manifests.

## SECTION II: WELL SPECIFIC SAMPLING REQUIREMENTS

### A. Drywells, Leach Pits, Cesspools, Open Pipes, Floor Drains discharging directly into the ground, and Similar Structures.

The following information must be included in a Workplan for a drywell, leach pit, cesspool, open pipe, or floor drain discharging directly into the ground.

#### 1.) Large capacity cesspools that have received <u>only</u> sanitary waste.

"Large capacity" means serves or designed to serve 20 or more people per day. The cesspool must be pumped out and the wastes must be disposed of properly by a licensed hauler. Excavation, end-point sampling and analysis are typically not required.

**2.) Drywells, cesspools, open pipes, or floor drains that have received industrial contaminants (directly or through a septic tank).**

Endpoint soil **s**amples must be collected after all contaminated liquids, sludges and soils have been removed from in, around and below the well at a depth of 6 inches to 1 foot below the base of the excavation. (If no apparent contamination is present in the injection well, a sample may be collected from a depth of 6 inches to 1 foot below the bottom of the injection well). If ground water is encountered during the remediation, a representative ground water sample shall be collected.

Endpoint samples must be analyzed for the constituents listed in Section III based on facility type and must include all contaminants that could enter into the groundwater as a result of the owner/operator's activities.

**B. Drainfields, Tile fields, Leachfields and Similar Subsurface Fluid Distribution Structures**

The following information must be included in a Workplan for a drainfield, tile field, leachfield, or other subsurface fluid distribution system that has or may have received industrial waste.

**1.) Pre-excavation sampling.** Due to the expense of excavation of a subsurface fluid distribution structure, EPA Region 2 allows pre-excavation sampling to determine if excavation of the injection well is necessary. Pre-excavation samples must be analyzed for the constituents listed in Section III based on facility type in addition to any contaminants that could enter groundwater as a result of the owner's or operator's activities. The pre-excavation sample results shall be tabulated. The full laboratory analytical report and the summary table shall be submitted to EPA for review. EPA will advise you of any additional sampling and/or remediation that may be necessary. Pre-excavation sampling must be performed as follows:

**a.) Industrial waste discharges to a septic system which then discharges to a drainfield, tile field, leach field or similar structure (i.e. all waste passes through the septic tank).**

i.) If the septic tank has not been pumped out in the last 12 months, collect 1 liquid sample and 1 sludge sample from within the septic tank.

ii.) If the septic tank has been pumped out within the last 12 months, collect 1 soil sample from the center of the drainfield at a depth of 1 foot below the burial depth of the laterals.

**b.) Industrial waste discharges directly to a drainfield, tile field, leachfield or similar structure (i.e. all waste by-passes septic tank).**

i.) Collect 1 soil sample from the center of the drainfield at a depth of 1 foot below the burial depth of the laterals.

**c.) Industrial waste discharges to a septic system which then discharges to a drainfield, tile field, leach field or similar structure AND industrial wastes discharges directly to a drainfield, tile field, leach field or similar structure (i.e. some waste passes through septic tank, some waste by-passes septic tank).**

i.) If the septic tank has not been pumped out in the last 12 months, collect 1 liquid sample and 1 sludge sample from within the septic tank, AND

ii.) Collect 1 soil sample from the center of the drainfield at a depth of 1 foot below the burial depth of the laterals.

**2.) Post-Excavation Sampling.** If excavation is required, a soil sample must be collected from a depth of between 6 inches to 1 foot below the base of the excavation and analyzed for the constituents listed in Section III based on facility type and must include all contaminants that could enter into the groundwater as a result of the owner/operators activities. If ground water is encountered during the remediation, a representative ground water sample must be collected. EPA recommends that the excavation not be backfilled until EPA has reviewed the Final Report and has notified the facility in writing that no additional remediation is necessary. If immediate backfilling is necessary, e.g. the excavation disrupts business or endangers the public, the excavation may be backfilled. However, removal of the backfill may be necessary if additional remediation is required.

## SECTION III: ANALYTICAL REQUIREMENTS

Samples must be collected in accordance with the collection procedures outlined in SW-846 and analyzed by a certified lab in accordance with EPA approved methods for the constituents listed in the following table and must include all contaminants that could enter into the groundwater as a result of the owner/operator's activities. Other EPA-approved analytical methods may be substituted with prior written approval of EPA. Please note, composite samples are not allowed for volatile organic compound sampling.

### a) Motor Vehicle Waste Disposal Wells:

| | Analytical Method | |
|---|---|---|
| Compound | Soil/Wastewater/Sludge | Ground Water |
| Volatile Organic Compounds (VOCs) | EPA Method 8260B | EPA Method 524.2 Rev 4.1 |
| Semi-volatile organic compounds | EPA Method 8270D | EPA Method 525.2 Rev 2.0 |
| Arsenic, cadmium, chromium, and lead | EPA Method 200.7 Rev. 4.4 | EPA Method 200.7 or 200.8 Rev 5.4 |

### b) Funeral Home Waste Disposal Wells:

| | Analytical Method | |
|---|---|---|
| Compound | Soil/Wastewater/Sludge | Ground Water |
| Volatile Organic Compounds (VOCs) | EPA Method 8260B | EPA Method 524.2 |

| | | |
|---|---|---|
| Phenol, 2-methylphenol and 4-methylphenol | EPA Method 8270C or 8041A | EPA Method 8270C or 8041A |
| Formaldehyde | EPA Method 8315A | EPA Method 8315 |
| Arsenic, cadmium, chromium, copper, lead and mercury | EPA Method 200.7 Rev. 4.4 | EPA Method 200.7 Rev. 4.4 or 200.8 Rev. 5.4 |

**c) Dry Cleaner Waste Disposal Wells:**

| | Analytical Method | |
|---|---|---|
| Compound | Soil/Wastewater/Sludge | Ground Water |
| Volatile Organic Compounds (VOCs) | EPA Method 8260B | EPA Method 524.2 |
| Semi-volatile organic compounds | EPA Method 8270C | EPA Method 525.2 |

**d) Other Industrial Waste Disposal Wells:**

| | Analytical Method | |
|---|---|---|
| Compound | Soil/Wastewater/Sludge | Ground Water |
| Volatile Organic Compounds (VOCs) | EPA Method 8260B | EPA Method 524.2 |
| Semi-volatile organic compounds | EPA Method 8270C | EPA Method 525.2 |
| Any other site-specific contaminants of concern | | |

# TABLE 1
# Region 2 UIC CLEANUP OBJECTIVES
**(Source: NYSDEC "Protection of Groundwater" Soil Cleanup Objectives[a])**

| CONTAMINANT | ALLOWABLE SOIL CONC. PPM | ALLOWABLE SOIL CONC. PPB | LIMIT SOURCE | CONTAMINANT TYPE |
|---|---|---|---|---|
| Aluminum | Not Listed | Not Listed | | inorg |
| Arsenic | 16.00 | 16000.00 | Table 375-6.8(b) | inorg |
| Barium | 820.00 | 820000.00 | Table 375-6.8(b) | inorg |
| Beryllium | 47.00 | 47000.00 | Table 375-6.8(b) | inorg |
| Cadmium | 7.50 | 7500.00 | Table 375-6.8(b) | inorg |
| Chromium VI | 19.00 | 19000.00 | Table 375-6.8(b) | inorg |
| Cobalt | Not Listed | Not Listed | | inorg |
| Copper | 1720.00 | 1720000.00 | Table 375-6.8(b) | inorg |
| Total Cyanide | 40.00 | 40000.00 | Table 375-6.8(b) | inorg |
| Iron | Not Listed | Not Listed | | inorg |
| Lead | 450.00 | 450000.00 | Table 375-6.8(b) | inorg |
| Magnesium | Not Listed | Not Listed | | inorg |
| Manganese | 2000.00 | 2000000.00 | Table 375-6.8(b) | inorg |
| Mercury | 0.73 | 730.00 | Table 375-6.8(b) | inorg |
| Nickel | 130.00 | 130000.00 | Table 375-6.8(b) | inorg |
| Potassium | Not Listed | Not Listed | | inorg |
| Selenium | 4.00 | 4000.00 | Table 375-6.8(b) | inorg |
| Sodium | Not Listed | Not Listed | | inorg |
| Vanadium | Not Listed | Not Listed | | inorg |
| Zinc | 2480.00 | 2480000.00 | Table 375-6.8(b) | inorg |
| Formaldehyde | Not Listed | Not Listed | | other |
| Polychlorinated biphenyls (PCBs) | 3.20 | 3200.00 | Table 375-6.8(b) | other |
| 2,4,5-T | 1.90 | 1900.00 | CP-51 Table 1 | pest-herb |
| 2,4-D | 0.50 | 500.00 | CP-51 Table 1 | pest-herb |
| 4,4'-DDD | 14.00 | 14000.00 | Table 375-6.8(b) | pest-herb |
| 4,4'-DDE | 17.00 | 17000.00 | Table 375-6.8(b) | pest-herb |
| 4,4'-DDT | 136.00 | 136000.00 | Table 375-6.8(b) | pest-herb |
| Aldrin | 0.19 | 190.00 | Table 375-6.8(b) | pest-herb |
| alpha-BHC | 0.02 | 20.00 | Table 375-6.8(b) | pest-herb |
| beta-BHC | 0.09 | 90.00 | Table 375-6.8(b) | pest-herb |
| Chlordane | 2.90 | 2900.00 | Table 375-6.8(b) | pest-herb |
| delta-BHC | 0.25 | 250.00 | Table 375-6.8(b) | pest-herb |
| Dibenzofuran | 6.20 | 6200.00 | CP-51 Table 1 | pest-herb |
| Dibenzo-P-dioxins | Not Listed | Not Listed | | pest-herb |
| Dieldrin | 0.10 | 100.00 | Table 375-6.8(b) | pest-herb |
| Endosulfan I | 102.00 | 102000.00 | Table 375-6.8(b) | pest-herb |

[a] Protection of Groundwater Soil Cleanup Objectives source: 6 NYCRR 375-6.8(b) and the Supplemental Soil Cleanup Objectives listed in Table 1 of NYSDEC CP-51

| CONTAMINANT | ALLOWABLE SOIL CONC. PPM | ALLOWABLE SOIL CONC. PPB | LIMIT SOURCE | CONTAMINANT TYPE |
|---|---|---|---|---|
| Endosulfan II | 102.00 | 102000.00 | Table 375-6.8(b) | pest-herb |
| Endosulfan Sulfate | 1000.00 | 1000000.00 | Table 375-6.8(b) | pest-herb |
| Endrin | 0.06 | 60.00 | Table 375-6.8(b) | pest-herb |
| gamma-BHC (Lindane) | 0.10 | 100.00 | Table 375-6.8(b) | pest-herb |
| gamma-chlordane | 14.00 | 14000.00 | CP-51 Table 1 | pest-herb |
| Heptachlor | 0.38 | 380.00 | Table 375-6.8(b) | pest-herb |
| Heptachlor epoxide | 0.02 | 20.00 | CP-51 Table 1 | pest-herb |
| Methoxychlor | 900.00 | 900000.00 | CP-51 Table 1 | pest-herb |
| Parathion | 1.20 | 1200.00 | CP-51 Table 1 | pest-herb |
| Pentachlorophenol | Not Listed | Not Listed | | pest-herb |
| Silvex (2,4,5-TP) | 3.80 | 3800.00 | Table 375-6.8(b) | pest-herb |
| 2,4,5-Trichlorophenol | 0.10 | 100.00 | CP-51 Table 1 | semivoc |
| 2,4-Dichlorophenol | 0.40 | 400.00 | CP-51 Table 1 | semivoc |
| 2,4-Dinitrophenol | 0.20 | 200.00 | CP-51 Table 1 | semivoc |
| 2,6-Dinitrotoluene | 1.00 | 1000.00 | CP-51 Table 1 | semivoc |
| 2-Chlorophenol | Not Listed | Not Listed | | semivoc |
| 2-Methylnaphthalene | 36.40 | 36400.00 | CP-51 Table 1 | semivoc |
| 2-Methylphenol | Not Listed | Not Listed | | semivoc |
| 2-Nitroaniline | 0.40 | 400.00 | CP-51 Table 1 | semivoc |
| 2-Nitrophenol | 0.30 | 300.00 | CP-51 Table 1 | semivoc |
| 3-Nitroaniline | 0.50 | 500.00 | CP-51 Table 1 | semivoc |
| 4-Chloro-3-methylphenol | Not Listed | Not Listed | | semivoc |
| 4-Chloroaniline | 0.22 | 220.00 | CP-51 Table 1 | semivoc |
| 4-Methylphenol | Not Listed | Not Listed | | semivoc |
| 4-Nitrophenol | 0.10 | 100.00 | CP-51 Table 1 | semivoc |
| Acenaphthene | 98.00 | 98000.00 | Table 375-6.8(b) | semivoc |
| Acenaphthylene | 107.00 | 107000.00 | Table 375-6.8(b) | semivoc |
| Aniline | 0.33 | 330.00 | CP-51 Table 1 | semivoc |
| Anthracene | 1000.00 | 1000000.00 | Table 375-6.8(b) | semivoc |
| Benzo(a)anthracene | 1.00 | 1000.00 | Table 375-6.8(b) | semivoc |
| Benzo(a)pyrene | 22.00 | 22000.00 | Table 375-6.8(b) | semivoc |
| Benzo(b)fluoranthene | 1.70 | 1700.00 | Table 375-6.8(b) | semivoc |
| Benzo(g,h,I)perylene | 1000.00 | 1000000.00 | Table 375-6.8(b) | semivoc |
| Benzo(k)fluoranthene | 1.70 | 1700.00 | Table 375-6.8(b) | semivoc |
| Benzoic acid | 2.70 | 2700.00 | CP-51 Table 1 | semivoc |
| bis(2-ethylhexl)phthalate (PAE) | 435.00 | 435000.00 | CP-51 Table 1 | semivoc |
| Butylbenzylphthalate (PAE) | 122.00 | 122000.00 | CP-51 Table 1 | semivoc |
| Chrysene ((PAH) | 1.00 | 1000.00 | Table 375-6.8(b) | semivoc |
| Dibenzo(a,h)anthracene | 1000.00 | 1000000.00 | Table 375-6.8(b) | semivoc |
| Dibenzofuran | Not Listed | Not Listed | | semivoc |
| Diethylphthalate (PAE) | 7.10 | 7100.00 | CP-51 Table 1 | semivoc |
| Dimethylphthalate (PAE) | 27.00 | 27000.00 | CP-51 Table 1 | semivoc |
| Di-n-butyl phthalate | 8.10 | 8100.00 | CP-51 Table 1 | semivoc |
| Di-n-octyl phthalate | 120.00 | 120000.00 | CP-51 Table 1 | semivoc |
| Fluoranthene | 1000.00 | 1000000.00 | Table 375-6.8(b) | semivoc |

| CONTAMINANT | ALLOWABLE SOIL CONC. PPM | ALLOWABLE SOIL CONC. PPB | LIMIT SOURCE | CONTAMINANT TYPE |
|---|---|---|---|---|
| Fluorene (PAH) | 386.00 | 386000.00 | Table 375-6.8(b) | semivoc |
| Hexachlorobenzene | 1.40 | 1400.00 | CP-51 Table 1 | semivoc |
| Hexachlorobenzene | 3.20 | 3200.00 | Table 375-6.8(b) | semivoc |
| Indeno(1,2,3-cd)pyrene (PAH) | 8.20 | 8200.00 | Table 375-6.8(b) | semivoc |
| Isophorone | 4.40 | 4400.00 | CP-51 Table 1 | semivoc |
| Naphthalene | 12.00 | 12000.00 | Table 375-6.8(b) | semivoc |
| Nitrobenzene | 0.17 | 170.00 | CP-51 Table 1 | semivoc |
| m-Cresol | 0.33 | 330.00 | Table 375-6.8(b) | semivoc |
| o-Cresol | 0.33 | 330.00 | Table 375-6.8(b) | semivoc |
| p-Cresol | 0.33 | 330.00 | Table 375-6.8(b) | semivoc |
| Pentachlorophenol | 0.80 | 800.00 | Table 375-6.8(b) | semivoc |
| Phenanthrene (PAH) | 1000.00 | 1000000.00 | Table 375-6.8(b) | semivoc |
| Phenol | 0.33 | 330.00 | Table 375-6.8(b) | semivoc |
| Pyrene (PAH) | 1000.00 | 1000000.00 | Table 375-6.8(b) | semivoc |
| 1,1,1-Trichloroethane | 0.68 | 680.00 | Table 375-6.8(b) | voc |
| 1,1,2,2-Tetrachloroethane | 0.60 | 600.00 | CP-51 Table 1 | voc |
| 1,1-Dichloroethane | 0.27 | 270.00 | Table 375-6.8(b) | voc |
| 1,1-Dichloroethene | 0.33 | 330.00 | Table 375-6.8(b) | voc |
| 1,2,3-Trichloropropane | 0.34 | 340.00 | CP-51 Table 1 | voc |
| 1,2,4-Trichlorobenzene | 3.40 | 3400.00 | CP-51 Table 1 | voc |
| 1,2,4-Trimethylbenzene | 3.60 | 3600.00 | Table 375-6.8(b) | voc |
| 1,2-Dichlorobenzene | 1.10 | 1100.00 | Table 375-6.8(b) | voc |
| 1,2-Dichloroethane | 0.02 | 20.00 | Table 375-6.8(b) | voc |
| 1,2-Dichloroethene(cis) | 0.25 | 250.00 | Table 375-6.8(b) | voc |
| 1,2-Dichloroethene(trans) | 0.19 | 190.00 | Table 375-6.8(b) | voc |
| 1,3,5-Trimethylbenzene | 8.40 | 8400.00 | Table 375-6.8(b) | voc |
| 1,3-Dichlorobenzene | 2.40 | 2400.00 | Table 375-6.8(b) | voc |
| 1,3-Dichloropropane | 0.30 | 300.00 | CP-51 Table 1 | voc |
| 1,4-Dichlorobenzene | 1.80 | 1800.00 | Table 375-6.8(b) | voc |
| 1,4 Dioxane | 0.10 | 100.00 | Table 375-6.8(b) | |
| 113 Freon (1,1,2 Trichloro-1,2,2 Trifluroethane) | 6.00 | 6000.00 | CP-51 Table 1 | voc |
| 2-Butanone | 0.30 | 300.00 | CP-51 Table 1 | voc |
| 4-Methyl-2-Pentanone | 1.00 | 1000.00 | CP-51 Table 1 | semivoc |
| Acetone | 0.05 | 50.00 | Table 375-6.8(b) | voc |
| Benzene | 0.06 | 60.00 | Table 375-6.8(b) | voc |
| Butylbenzene | 12.00 | 12000.00 | Table 375-6.8(b) | voc |
| Carbon Disulfide | 2.70 | 2700.00 | CP-51 Table 1 | voc |
| Carbon Tetrachloride | 0.76 | 760.00 | Table 375-6.8(b) | voc |
| Chlorobenzene | 1.10 | 1100.00 | Table 375-6.8(b) | voc |
| Chloroethane | 1.90 | 1900.00 | CP-51 Table 1 | semivoc |
| Chloroform (THM) | 0.37 | 370.00 | Table 375-6.8(b) | voc |
| Ethylbenzene | 1.00 | 1000.00 | Table 375-6.8(b) | voc |
| Isopropylbenzene | 2.30 | 2300.00 | CP-51 Table 1 | voc |
| Methyl ethyl ketone | 0.12 | 120.00 | Table 375-6.8(b) | |
| Methyl tert butyl ether | 0.93 | 930.00 | Table 375-6.8(b) | voc |

| CONTAMINANT | ALLOWABLE SOIL CONC. PPM | ALLOWABLE SOIL CONC. PPB | LIMIT SOURCE | CONTAMINANT TYPE |
|---|---|---|---|---|
| Methylene chloride | 0.05 | 50.00 | Table 375-6.8(b) | voc |
| p-Cymene | Not Listed | Not Listed | | voc |
| p-Isopropyltoluene | 10.00 | 10000.00 | CP-51 Table 1 | voc |
| Propylbenzene n- | 3.90 | 3900.00 | Table 375-6.8(b) | voc |
| sec-Butylbenzene | 11.00 | 11000.00 | Table 375-6.8(b) | voc |
| tert-Butylbenzene | 5.90 | 5900.00 | Table 375-6.8(b) | voc |
| Tetrachloroethene (PCE) | 1.30 | 1300.00 | Table 375-6.8(b) | voc |
| Toluene | 0.70 | 700.00 | Table 375-6.8(b) | voc |
| Trichloroethene (TCE) | 0.47 | 470.00 | Table 375-6.8(b) | voc |
| Vinyl chloride | 0.02 | 20.00 | Table 375-6.8(b) | voc |
| Xylenes | 1.60 | 1600.00 | Table 375-6.8(b) | voc |

# APPENDIX C

EPA

United States Environmental Protection Agency

# Class V Well Pre-Closure and Post-Closure Notification Form

1. Name and Address of Facility

2. Description of Facility/Wells To Be Closed

3. State

4. County

5. Permit (or EPA ID) Number

6. Latitude

Longitude

7. Name, Address, Phone Number and/or Email of Permittee

8. Name, Address, Phone Number and/or Email of Legal Contact

9. Type of Wells

10. Number of Well(s)

11. Well construction type (check all that apply):

- ☐ Drywell
- ☐ Septic tank
- ☐ Cesspool
- ☐ Improved sinkhole
- ☐ Drainfield/Leachfield
- ☐ Other (Describe Below)

12. Type of discharge:

13. Average flow (gallons/day)

14. Year(s) of well(s) construction

15. Type of well closure (check all that apply):

- ☐ Sample fluids/sediments
- ☐ Appropriate disposal of remaining fluids/sediments
- ☐ Remove well & any contaminated soil
- ☐ Other (describe):
- ☐ Clean out well
- ☐ Install permanent plug
- ☐ Conversion to other well type (Describe):

16. Date of well closure (Proposed)

Date of well closure (Actual)

## Certification

**I certify under the penalty of law that I have personally examined and am familiar with the information submitted in this document and all attachments and that, based on my inquiry of those individuals immediately responsible for obtaining the information, I believe that the information is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment. (Ref. 40 CFR § 144.32)**

| Authorized Signatory and Official Title (*Please type or print*) | Signature | Date Signed |
|---|---|---|
| | | |

**INSTRUCTIONS FOR FORM 7520-17**

This form contains the minimum information that you must provide your UIC Program Director if you intend to close your Class V well. This form will be used exclusively where the EPA administers the UIC Program: AK, AS, AZ, CA, CO, DC, HI, IA, IN, KY, MI, MN, MT, NY, PA, SD, VA, VI, and on all Tribal Lands. If you are located in another State or jurisdiction, ask the agency that administers the UIC Program in your State for the appropriate form. **If your Class V well is operating under a permit that requires a plugging report or other documentation, please follow the requirements of the permit.**

If you are closing two or more Class V wells that are of similar construction at your facility (two dry wells, for example) you may use one form. If you are closing Class V wells of different construction (a septic system and a dry well, for example) use one form per construction type.

***Please read:*** The purpose of this form is to serve as a notification to the UIC Director by a Class V well owner or operator of his/her intent to close the well in accordance with Title 40 of the Code of Federal Regulations (40 CFR) Section 144.12(a). According to 40 CFR 144.86, you must notify the UIC Program Director at least 30 days prior to well closure of your intent to close and abandon your well. Upon receipt of this form, if the Director determines that more specific information is required to be submitted to ensure that the well closure will be conducted in a manner that will protect underground sources of drinking water (as defined in 40 CFR 144.3), the Director can require the owner or operator to prepare, submit and comply with a closure plan acceptable to, and approved by the Director.

Please be advised that this form is intended to satisfy Federal UIC requirements regarding closure notification only. Other State, Tribal or Local requirements may also apply.

**1. NAME AND ADDRESS OF FACILITY**: Supply the name and street address of the facility where the well is located. Include the city/town, State, and ZIP Code. If there is no street address for the Class V well, provide the route number or locate the well on a map and attach it to this form.

**2. DESCRIPTION OF FACILITY/WELL TO BE CLOSED**: Describe the well (or, in a multiple-well facility, which wells) to be closed. Attach the original and most recent schematics or drawings to fully describe the facility.

Enter the **3. STATE** and **4. COUNTY** where the well is located. For States that do not have counties, use the name of that State’s equivalent jurisdiction at a more local level.

**5. PERMIT (OR EPA ID) NUMBER:** Enter the well identification number or permit number assigned to the injection well by the EPA or the permitting authority.

**6. LATITUDE AND LONGITUDE**: Enter the **latitude** and **longitude** of the well in decimal degrees, to five or six places if possible.

**7. NAME, ADDRESS, PHONE NUMBER AND/OR EMAIL OF PERMITTEE:** Provide the name and mailing address of the owner of the facility (or, if the facility is operated by lease, the operator of the facility).

**8. NAME, ADDRESS, PHONE NUMBER AND/OR EMAIL OF LEGAL CONTACT:** Provide the name and phone number of the legal contact for any questions regarding the information provided on this form. If the legal contact is the same as the permittee, enter “same as permittee.”

**9. TYPE OF WELL:** Indicate the type of Class V well that you intend to close (for example, motor vehicle waste disposal well or cesspool).

**10. NUMBER OF WELLS**: Provide the number of wells of this well type at your location that will be closed.

**11. WELL CONSTRUCTION TYPE**: Check the appropriate box(es) to indicate the type of well construction. Check all that apply to your situation. For example, for a septic tank that drains into a drywell, check both the "septic tank" and "drywell" boxes. Please provide a generalized sketch or schematic of the well construction, if one is available. If you select “other,” please describe the well’s construction in the space provided.

**12. TYPE OF DISCHARGE:** List or describe the types of fluids that enter the Class V well. If available, attach a copy of the chemical analysis results and/or the Material Safety Data Sheets for the fluids that enter the well.

**13. AVERAGE FLOW**: Estimate the average daily flow into the well, in gallons per day.

**14. YEAR OF WELL CONSTRUCTION:** Provide the year that the Class V well was constructed. If unknown, provide the length of time that your business has been at this location and used this well.

**15. TYPE OF WELL CLOSURE**: Check the appropriate box(s) to indicate briefly how the well closure is expected to proceed. Check all that apply to your situation. For example, check “Install permanent plug” and “Conversion to other well type” if the connection of an automotive service bay drain leading to a septic tank and drainfield will be closed (and a cement plug placed in the service bay drain and the pipe leading to the washroom connection), but the septic system will continue to be used for washroom waste disposal only. In this example, the motor vehicle waste disposal well is being converted to another well type (a large capacity septic system).

**16. DATE OF WELL CLOSURE:** Provide the proposed/planned or actual date on which closure of the well occurred, as appropriate.

**CERTIFICATION:** This form must be signed and dated by either: an authorized responsible corporate officer for a corporation, by a general partner for a partnership, by the proprietor of a sole proprietorship, or by a principal executive or ranking elected official for a public agency.

**PAPERWORK REDUCTION ACT NOTICE:** The public reporting and recordkeeping burden or this collection of information is estimated to average 1.4 hours per response. Burden means the total time, effort, or financial resource expended by persons to generate, maintain, retain, or disclose or provide information to or for a Federal Agency. This includes the time needed to review instructions; develop, acquire, install, and utilize technology and systems for the purposes of collecting, validating, and verifying information, processing and maintaining information, and disclosing and providing information; adjust the existing ways to comply with any previously applicable instructions and requirements; train personnel to be able to respond to the collection of information; search data sources; complete and review the collection of information; and, transmit or otherwise disclose the information. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number. Send comments on the Agency’s need for this information, the accuracy of the provided burden estimates, and any suggested methods for minimizing respondent burden, including the use of automated collection techniques to Director, Collection Strategies Division, U.S. Environmental Protection Agency (2822), 1200 Pennsylvania Ave., NW., Washington, D.C. 20460. Include the OMB control number in any correspondence. Do not send the completed forms to this address.